**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DERRICK L. WRIGHT,**

> **Plaintiff,**

> **v.**                                              **Civil Action No. 3:23cv746**

**J. WILSON,** *et al.,*

> **Defendants.**

### MEMORANDUM OPINION

Derrick L. Wright, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this

42 U.S.C. § 1983 action.[1]  The matter is before the Court on Mr. Wright's Second Particularized

Complaint, (ECF No. 22), for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I.  Preliminary Review

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any

action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state

a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A.  The

first standard includes claims based upon "an indisputably meritless legal theory," or claims

where the "factual contentions are clearly baseless."  *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes
> to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an action
> at law . . . .

42 U.S.C. § 1983.

Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  Summary of Allegations and Claims

In his Second Particularized Complaint, Mr. Wright names J. Wilson, a correctional employee at Meherrin River Regional Jail and John Doe, the Warden of Meherrin River Regional Jail. (ECF No. 22, at 1.)[2] Mr. Wright alleges as follows:

> 4. J. Wilson, is a correctional officer employed at Meherrin River Regional Jail (hereinafter referred to as Meherrin). On the date and time this matter occurred, it had been J. Wilson's responsibility to distribute all legal mail to prisoners housed in the jail. J. Wilson gave the Plaintiff's legal mail to another prisoner.
>
> 5. John Doe is the Warden of Meherrin. The Plaintiff is using the name John Doe because at this time he does not know the actual name of the person who was the Warden of Meherrin at the time this incident occurred. On the date and time of this matter, Defendant John Doe oversaw the institution of all such policy [which] was the mandated shredding of all original copies of legal correspondence forwarded to detainees. Defendant John Doe's policy led to the destruction of the Plaintiff's legal mail.

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization and punctuation in the quotations from Mr. Wright's submissions.

IV. Facts

6. On October 14, 2023, a prisoner incarcerated at Meherrin by the name of Charles K. Wright handed the Plaintiff legal documents that actually belonged to the Plaintiff but that had been given to Mr. Wright one month prior by Defendant Wilson.

7. At or about September 14, 2023, Defendant Wilson called Charles Wright out of the pod where he was incarcerated into the jail's hallway to pick up legal mail. Defendant Wilson did not properly verify whether Charles Wright was the correct prisoner to whom the mail was addressed, and she handed Charles Wright the Plaintiff's legal correspondence from the Plaintiff's attorney.

8. Defendant Wilson opened the Plaintiff's correspondence from his attorney in front of Mr. Wright, she copied it, and then per policy of Meherrin, she shredded the original. Charles Wright then signed for the Plaintiff's legal mail and took it to his cell.

9. Mr. Charles Wright kept the Plaintiff's legal mail approximately one month even though it did not belong to him. On or about October 14, 2023, Charles Wright forwarded the mail to its rightful owner, the Plaintiff.

10. In the month Mr. Wright held the Plaintiff's legal mail, his attorney had scheduled conference calls with Meherrin [so] that he could speak to the Plaintiff about the Plaintiff's appeal. [] However, because the Plaintiff did not know his attorney had been trying to contact him, he missed each conference call. In addition, the Plaintiff was unable to consult with his counsel on what issues he wished to be raised on appeal and about his legal options following his appeal.

11. Furthermore, once Charles Wright took hold of the Plaintiff's legal mail, he gained access to the Plaintiff's personal information and to information pertaining to his case. Charles Wright now had knowledge of embarrassing details about the Plaintiff's case which he shared amongst his friends and the jail population, putting the Plaintiff's life in danger.

12. The embarrassing detail of the Plaintiff's case Charles Wright held was that the Plaintiff had been arrested and charged with the intent to distribute drugs. Charles Wright made it known that he disliked persons with charges such as those with which the Plaintiff had been charged because he blamed individuals like the Plaintiff for why he was incarcerated.

13. The grudge Charles Wright held against so-called drug dealers stemmed from the fact his grandson repeatedly stole from Wright and Wright's family to finance his drug habit. Charles Wright ultimately was arrested and charged for murdering his grandson for stealing from him and attributed all the difficulties he

and his family faced was because of individual[s] like the Plaintiff whom he despised.

      14.  From that point forward, the Plaintiff faced intimidation and threats from Wright that put Plaintiff in fear for his life.

(ECF No. 22, at 2–6 (citations omitted).)  Mr. Wright raises the following claims:[3]

| | |
|---|---|
| Claim One: | "Defendant Wilson's actions deprived the Plaintiff of the right to have his correspondence between himself and his attorney remain secret.  The attorney-client privilege is a privilege provided under federal law through the common law." (ECF No. 22 ¶ 17.) "Defendant Wilson's actions harmed the Plaintiff because, once the details of his case became known among the jail such information led prisoners including Charles Wright to begin intimidating and threatening the Plaintiff.  In addition, the disclosure of his charges caused the Plaintiff deep shame and emotional distress." (ECF No. 22 ¶ 18.) |
| Claim Two: | "Defendant Wilson's actions also deprived the Plaintiff of his right to access to the courts as has been provided to him under the First Amendment to the United States Constitution[4] . . . when due to her gross negligence she gave the Plaintiff's legal mail to Charles Wright . . . ." (ECF No 22 ¶¶ 19–20.) |
| Claim Three: | "Defendant John Doe's policy that requires Meherrin Correctional Staff to copy and supposedly shred all legal correspondence to prisoners, violated the Plaintiff's common law privilege of attorney-client privilege" because it is "unknown whether [Defendant J. Wilson] made more than one copy or whether she even shredded to original document." (ECF No. 22 ¶¶ 23–34.) |

Mr. Wright requests "[a] declaration that acts and omissions described subjected Plaintiff to

deprivation of his rights" and damages.  (ECF No. 22 ¶¶ 25–32.)

---

[3] The Court omits the citations in the statement of claims.

[4] "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I.

## IV. Analysis

### A.     Misdelivery of Mail Fails to State a Constitutional Claim

Mr. Wright alleges, that on one occasion, Defendant Wilson mistakenly gave a letter addressed to Mr. Wright from his attorney to the wrong inmate. Mr. Wright alleges that this violated his "common law" attorney-client privilege and his First Amendment right to access the courts.[5]  No matter what constitutional theory Mr. Wright alleges, isolated instances of mail mishandling do not rise to the level of a constitutional violation. *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) ("[A] few isolated instances of plaintiff's [legal] mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct . . . were not of constitutional magnitude."); *cf. Gardner v. Howard*, 109 F.3d 427, 430–31 (8th Cir. 2007) (explaining that "an isolated, inadvertent instance of opening incoming confidential legal mail" outside of inmate's presence is not actionable); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that the prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" (citations omitted)); *Baltas v. Clarke*, No. 7:20cv00276, 2021 WL 1080516, at *22 (W.D. Va. Mar. 18, 2021) ("[N]umerous courts have held that the negligent or inadvertent opening of legal mail outside the presence of an

---

[5] Courts have found that a claim of denial of access to the courts may derive from the Due Process Clause of the Fourteenth Amendment or the First Amendment right to petition the government for redress of grievances. *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995) (citing cases that review claim under both amendments).  However, "it matters not, for the purposes of § 1983, whether the right of access is catalogued under the First or Fourteenth Amendment." *Id.* As discussed below, it is also of no import here because "[n]egligent official conduct does not instantly become actionable under § 1983 because it is termed an infringement of the right to petition rather than a violation of due process." *Id.*

inmate, in isolated instances, does not constitute an independent constitutional violation." (citation omitted) (alteration in original).)

The Court is sympathetic to Mr. Wright's allegations that another inmate read Mr. Wright's mail, held it for a month, and confronted him when returning the mail to him. However, Mr. Wright's allegations are insufficient to state a cognizable § 1983 claim against Defendant Wilson.[6] Rather, Mr. Wright's allegations that Defendant Wilson mistakenly gave Mr. Wright's legal mail to another inmate sound, at most, in negligence. *See Pink*, 52 F.3d at 75 ("the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, property . . . preclud[ing] appellant's claim that the prison officials . . . negligently denied him access to the courts" (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986))); *Bryant v. Wilson*, 750 F. Supp. 733, 734 (E.D. Va. 1990) (explaining that when an officer is "at most, negligent for erroneously opening plaintiff's legal mail," and "the record reflects that this unfortunate occurrence was an isolated event and not part of any pattern or practice" this fails to state a constitutional claim). Accordingly, Claims One and Two will be DISMISSED as legally frivolous and for failure to state a claim for relief.

### B.     Mail Photocopying Policy

In Claim Three, Mr. Wright contends that "Defendant John Doe's policy that requires Meherrin Correctional Staff to copy and supposedly shred all legal correspondence to prisoners, violated the Plaintiff's common law privilege of attorney-client privilege" because it is "unknown whether [Defendant J. Wilson] made more than one copy or whether she even shredded to original document." (ECF No. 22 ¶¶ 23–24.) Although Mr. Wright provides sparse details about the actual policy, it appears that Meherrin staff are required to open the legal mail

---

[6] Mr. Wright does not allege that Defendant Wilson knew that Charles Wright had confronted Mr. Wright over the contents of the letter.

in the inmate's presence, photocopy the mail, give the copied version to the inmate, and shred the original. (ECF No. 22 ¶ 5.) As a preliminary matter, Mr. Wright's allegation that Defendant Wilson could or may have made more than one copy or may have not shredded the mail is entirely speculative. *See Iqbal*, 556 U.S. at 679 (explaining that "where the well-pleaded facts do permit the court to infer more than the mere possibility of misconduct . . . [the complaint] has not 'shown'—'that the pleader is entitled to relief'" (quoting Fed. R. Civ. P. 8(a)(2)); *Cochran*, 73 F.3d at 1317 (explaining that "[s]pecificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations"). Mr. Wright also fails to allege facts indicating how this mail policy violated his constitutional rights. For this reason alone, his claim fails.

Although Mr. Wright characterizes this policy as a violation of "common law privilege of attorney-client privilege," to the extent he could allege a constitutional violation, that would likely fall under the First or Fourteenth[7] Amendment. Courts have concluded that a Virginia Department of Corrections ("VDOC") mail copying policy similar to what Mr. Wright complains of at Meherrin River Regional Jail "is a valid policy that does not run afoul of the First Amendment or the Fourteenth Amendment." *Ofori v. Clarke*, No. 7:20-cv-00343, 2021 WL 4392956, at *6–7 (W.D. Va, Sept. 24, 2021) (citations omitted) (finding policy that required copying of mail and receipt of copies of mail on JPay tablets constitutional), *aff'd* No. 22-6983, 2023 WL 5624556 (4th Cir. Aug. 31, 2023); *Baltas*, 2021 WL 1080516, at *21 (explaining that the VDOC mail photocopying "policy at issues comports with the First Amendment" (citations omitted)); *Strebe v. Kanode*, No. 7:17cv00321, 2018 WL 4473117, at *5–7 (W.D. Va. 2018) (finding that mail copying policy "passes constitutional muster"), *aff'd* 783 F. App'x 285, 289

---

[7] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

(4th Cir. 2019).  Accordingly, any constitutional challenge to the Meherrin mail photocopying policy lacks merit based on the facts alleged here.  Claim Three will be DISMISSED for failure to state a claim.

## V.  Conclusion

Mr. Wright's claims will be DISMISSED for failure to state a claim and as legally frivolous.  The Clerk will be DIRECTED to note the disposition for the purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Date:  10\31\2024
Richmond, Virginia

_____
/s/
M. Hannah Lauck
United States District Judge

9